# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA RIVERA, | ) 1:09cv01971 DLB |
| | ) |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Juanita Rivera ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on December 20, 2005, alleging disability since August 28, 2003, due to degenerative joint disease and an emotional disorder. AR 109-115, 147-153. After her application was denied initially and on reconsideration, Plaintiff requested a hearing before

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

an Administrative Law Judge ("ALJ").  AR 76-77, 82-86, 88.  ALJ Bert C. Hoffman, Jr., held a hearing on July 8, 2008, and issued an order denying benefits on November 3, 2008.  AR 19-29, 30-58.  On September 8, 2009, the Appeals Council denied review.  AR 4-7.

Hearing Testimony

ALJ Hoffman held a hearing in Fresno, California, on July 8, 2008.  Plaintiff attended the hearing with her representative, Rosemary Sombrana.  AR 30.

When questioned by her representative, Plaintiff explained that she is bipolar and schizophrenic because she hears voices.  When she is sick, she doesn't know herself and is "completely gone."  AR 36-37.  She cannot function with her family and cannot work.  Plaintiff doesn't go out too much and keeps away from other people.  AR 37.  She is sometimes argumentative.  AR 37.

Plaintiff was going through a divorce, which she believed was in part caused by her illness.  Plaintiff has four children.  The oldest is 24 and the youngest is 17.  AR 40-41.  Her children are "all scattered."  AR 38.  Plaintiff and her husband had separated and reconciled before.  AR 38-39.  She has not actually initiated divorce proceedings because she cannot afford to do so.  AR 42-43.

Plaintiff was living with her parents and receives general assistance.  AR 40, 42.  She sees her doctor every month and has since August 2007.  Plaintiff also received treatment in 2005 and 2006, though at one point she could not afford treatment or medication.  AR 42.

Plaintiff testified that she last worked in 2003.  AR 45.  She helps her parents cook and clean and sometimes goes with her father to the grocery store.  Plaintiff drives to her doctors' appointments.  She also visits her sister, who is bipolar and schizophrenic, once a week.  AR 45-46.

Besides being mentally ill, Plaintiff testified that she has a problem with her joints and that sitting for a long time is "not good" for her.  It has been over one year since she has seen a doctor for this because she cannot afford to do so.  AR 48.

Plaintiff takes Benedryl and Abilify for sleeping, anxiety and auditory hallucinations and Prozac for depression.  The medications work "okay," though Plaintiff still has days when she is

really depressed.  She estimated that this happens about three days a week.  AR 49.  Her doctor has told her she should not work.  AR 51.

Plaintiff testified that she usually gets up around 10:00 a.m., and then makes coffee and gets dressed.  She makes something to eat if she is hungry, watches television or goes outside for a walk.  Sometimes she crotchets.  AR 52.  Plaintiff then helps her mother cook dinner and cleans up the kitchen.  AR 53.  After dinner, she may crotchet, watch television or walk to visit a friend.  AR 54.

Medical Evidence

On September 3, 2005, Plaintiff was admitted to Kaweah Delta Mental Health Hospital on a 5150 after she was allegedly driving erratically.  Plaintiff denied any reason for hospitalization and indicated that family stressors, including a possible divorce and a son in juvenile hall, may have contributed to her aberrant driving.  Plaintiff was encouraged to follow up with her physician and was not given any medications.  She was diagnosed with brief reactive psychosis and history of treatment for bipolar-affective disorder.  AR 237-238.

On September 26, 2005, Plaintiff's family brought her to the emergency room for a psychiatric evaluation because she hadn't been sleeping and was agitated.  On examination, Plaintiff displayed appropriate behavior and denied suicidal or homicidal ideations, or any other psychotic condition.  Plaintiff was able to communicate clearly and provide sufficient details during the examination, without providing any reasons for a medical hold.  AR 255-256.

On October 27, 2005, Plaintiff was again admitted on a 5150 after she became irrational and threatened to stab her sister with a fork.  Plaintiff denied this, though she was quite irritable and uncooperative on admission.  Plaintiff had a history of bipolar disorder but had not been compliant with medication.  During her hospitalization, she was treated with Zyprexa and required emergency treatments with intramuscular Thorazine or Haldol on several occasions after becoming threatening and violent.  Plaintiff eventually became less emotionally labile and less paranoid and was discharged on November 4, 2005.  Plaintiff was discharged to Naomi's House because her family refused to take her back home.  Her diagnoses were bipolar I disorder,

most recent episode manic, severe, without psychotic features.  Her GAF was 35 on admission and 50 on discharge.  AR 264-301.

Treatment records from Fresno County Mental Health dated January 13, 2006, indicate that Plaintiff's mood was happy and elevated and her affect was congruent.  Her speech was pressured.  Plaintiff's sleep patterns were normal and she reported medication compliance.  She denied hallucinations and suicidal ideations.  Plaintiff's memory, abstraction, interpretation and insight were fair.  Her judgment was good.  Plaintiff had a good fund of knowledge and a GAF of 55.  Plaintiff was diagnosed with bipolar disorder.  The Licensed Social Worker noted that Plaintiff had a "somewhat untypical presentation of a person with bipolar disorder."  She either "minimizes her symptoms or is very unsophisticated about the illness or she is in denial of having it."  AR 348-354.

Plaintiff was evaluated on March 21, 2006, at Fresno County Mental Health by Josefina A. Collado, M.D.  She reported increased depression, crying spells, insomnia, poor appetite and low energy and concentration.  She also reported that she becomes angry and irritable at times and is easily frustrated by little things.  On examination, Plaintiff's mood was calm and her affect was anxious.  Insight and judgment were fair and she was cooperative.  Plaintiff's eye contact was fair.  Dr. Collado diagnosed Plaintiff with bipolar disorder and prescribed medication.  AR 339-340.

Plaintiff was evaluated by Greg Hirokawa, M.D., on June 22, 2006.  Plaintiff reported being depressed and hearing voices at times, but was vague as to a description.  Plaintiff also reported that she had been diagnosed with bipolar disorder but had not been on medication since April 2006.  On mental status examination, Plaintiff was cooperative and showed no motor or vocal abnormalities.  Thought content was appropriate and she denied auditory or visual hallucinations.  Plaintiff's mood appeared depressed and her affect was restricted.  Her intellectual functioning appeared to be within the below average range.  Plaintiff's recent memory was intact though her remote memory was impaired.  She was able to perform a simple three-step command and her concentration for conversation was adequate.  AR 304-307.

Dr. Hirokawa diagnosed bipolar depression, type II, depressed type, in partial remission, personality disorder, not otherwise specified, and degenerative joint disease. He noted that Plaintiff has a documented history of being bipolar, where she becomes violent and aggressive and requires psychiatric hospitalization. Plaintiff appeared to be minimizing her mental illness according to the records and is in partial denial. Plaintiff's symptoms appeared to be in the mild range and in partial remission, even though she was not taking medication (due primarily to cost) or receiving mental health treatment.

Dr. Hirokawa opined that Plaintiff's ability to remember location and work-like procedures and understand, remember and carry out very short and simple instructions was good. Her ability to understand, remember and carry out detailed instructions was fair. Her ability to maintain attention and concentration for extended periods was good. Her ability to accept instructions from a supervisor and respond appropriately to criticism was fair due to her personality disorder. Plaintiff had a good ability to perform within a schedule, maintain regular attendance, be punctual and sustain an ordinary routine without supervision. Her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms was fair, as was her ability to perform at a consistent pace. Plaintiff's ability to interact with coworkers and the general public was fair. There was a minimal to moderate likelihood of Plaintiff emotionally deteriorating in the work environment. AR 308-309.

On August 14, 2006, State Agency physician A.R. Garcia, M.D., completed a Psychiatric Review Technique Form. He opined that Plaintiff did not have a severe mental impairment, nothing that Plaintiff had a "depressive episode, while going through change in family structure and living situation" and that her condition resolved with treatment. As her condition did not last 12 continuous months, there were no work restrictions. AR 316-326.

On August 16, 2007, Plaintiff was admitted to Community Medical Center on a 5150 after she had not been sleeping and was physically assaultive with her family. She was discharged on August 17, 2007, with instructions to take her medication as prescribed and follow up with Fresno County Mental Health. AR 334-336.

On August 28, 2007, Plaintiff was brought to Fresno County Mental Health and placed in restraints because she was an imminent danger to herself and others. She had been acting violently and setting paper on fire. AR 425-426.

Plaintiff was admitted on a 5150 again in September 2007. Plaintiff's family brought her to the hospital for being out of control and violent. On admission, Plaintiff was hyper verbal with increased motor movements. Her mood and affect were elevated and her speech was rapid. She had a short attention and concentration span and her thought content presented with gross denial and with excessive focus on her husband. Insight and judgment were poor. AR 407-408.

During an October 2007 examination, Plaintiff was appropriately dressed, calm and had good eye contact. She was engaging and cooperative. Plaintiff's mood was euthymic and her affect was congruent. She was of average intelligence and her memory and insight were fair. Plaintiff's judgment was poor. She was diagnosed with bipolar disorder, not otherwise specified. The Licensed Social Worker also noted that Plaintiff was having relationship issues with her partner and problems with her primary support group. AR 402-403.

Treatment notes from December 2007 indicate that Plaintiff was held on another 5150 in October 2007 for domestic violence. On examination, Plaintiff was alert and cooperative with fair eye contact. Her affect and mood were appropriate. She reported auditory hallucinations in the past and denied suicidal ideations. Insight and judgment were fair. Dr. Collado diagnosed bipolar disorder. AR 391, 401.

On January 17, 2008, Plaintiff returned to Dr. Collado and reported that she was doing better and sleeping well. She had less anxiety and mood swings, though she complained of chronic pain. Her response to medication had improved. On examination, her mood was depressed and her affect was labile. Plaintiff's intelligence was average and insight and judgment were normal. AR 389.

In March 2008, Dr. Collado noted that Plaintiff was anxious and depressed because her sister was mentally ill. Plaintiff was taking her medication and her response to medication had improved. On examination, her mood was depressed and her affect was labile. Plaintiff's intelligence was below average, though insight and judgment were normal. AR 388.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairment of bipolar disorder, depressed type. Despite this impairment, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with limited public contact. Plaintiff had no past relevant work but could perform a significant number of jobs in the national economy. AR 24-28.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age,

7

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (bipolar disorder, depressed type) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform a significant number of jobs in the national economy. AR 24-28.

Here, Plaintiff argues that the ALJ (1) improperly rejected the opinion of Dr. Hirokawa; and (2) provided insufficient reasons for rejecting her testimony.

**DISCUSSION**

A.   Medical Opinions

Plaintiff argues that the ALJ ignored certain limitations imposed by Dr. Hirokawa.

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

Plaintiff's medical record contained two functional assessments. The ALJ rejected the State Agency physician, who found that Plaintiff did not have a severe mental impairment, in favor of consultive examiner Dr. Hirokawa. AR 28. As part of his RFC finding, the ALJ adopted Dr. Hirokawa's opinion that Plaintiff could understand, remember and carry out simple tasks, maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance, deal with various changes in the work setting, and sustain an ordinary routine without special supervision. AR 28. He also adopted Dr. Hirokawa's opinion that Plaintiff's ability to interact with the general public was "fair," and found that Plaintiff could perform work at all levels with limited public contact. AR 28.

Plaintiff argues that the ALJ improperly ignored Dr. Hirokawa's opinion that Plaintiff was limited in other areas. Specifically, she points to Dr. Hirokawa's finding that Plaintiff had a "fair" ability to (1) understand, remember and carry out detailed instructions; (2) accept instructions from a supervisor and respond appropriately to criticism; and (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace. Plaintiff contends that the ALJ knew that the definition of "fair" meant "something serious and significant" because he included the limitation in public contact in the RFC. Opening Brief, at 9.

The Court agrees that the ALJ erred by not explaining why he rejected the above limitations where Dr. Hirokawa was the only examining source and the only one to set forth specific limitations. This is especially true where the ALJ gave Dr. Hirokawa's opinion "significant weight," yet incorporated only a portion of one limitation into the RFC finding. For example, Dr. Hirokawa found Plaintiff to be fairly limited in her ability to interact with coworkers and the public, yet the ALJ, arbitrarily and without explanation, included only a limitation in Plaintiff's contact with the public. Moreover, even though he noted that Dr. Hirokawa found that Plaintiff's ability to understand, remember and carry out very short and simple instructions was good, he did not include a limitation to simple tasks in Plaintiff's RFC.

Defendant attempts to characterize the issue as one involving the difference between a step two and a step five finding. Defendant even cites *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir.

2007), where the Court explained that the ALJ need not include the limitations used in determining whether a mental impairment is severe in a claimant's RFC finding. *Hoopai*, however, is inapposite to these facts. The ALJ here simply failed to discuss why he rejected certain limitations imposed by the only examining source.

An ALJ need not discuss all evidence presented to him, but he must explain why "significant probative evidence has been rejected." <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 <u>F.2d 1393, 1394-1395 (9th Cir. 1984)</u>. Here, the functional limitations that the ALJ ignored were both significant and probative. The ALJ's failure to explain his treatment of certain limitations imposed by Dr. Hirokawa renders his analysis of the medical evidence, as well as the RFC finding, unsupported by substantial evidence. Remand will be discussed at the end of this opinion.

B.   Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ provided insufficient reasons for rejecting her testimony.

In <u>Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007)</u>, the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See* <u>Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989)</u>. However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" <u>Morgan, 169 F.3d at 599</u> (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." <u>Id</u>. Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." <u>Id</u>.
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see* <u>Daniels v. Apfel, 154 F.3d 1129, 1131 (10th Cir.1998)</u> (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately

10

explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

In assessing Plaintiff's credibility, the ALJ first noted that she "testified that Dr. Collado told her not to work but the record did not corroborate that." AR 28. In support, he cites various treatment notes of Dr. Collado that discuss only the examination and do not set forth any functional limitations. AR 28. Plaintiff testified, however, that Dr. Collado indicated she shouldn't work on forms that she helped Plaintiff complete for "general relief." AR 51. It is certainly possible that the forms to which Plaintiff refers were not included in her file and not referred to in treatment notes. In any event, it is not legitimate to conclude, without further inquiry, that Plaintiff was not being honest.

The ALJ next finds that the "record indicates that the claimant is noncompliant with treatment, i.e., not taking medication for years, had refused medication, has left against medical advice, does not want any mental health group counseling, and would not consider treatment other than seeing a doctor for medication." AR 28. The ALJ also explained that since Plaintiff has been taking her medications, "she is doing better, sleeping good, and has less anxiety and mood swings, and might be interested in group therapy." AR 28.

As this Court has previously explained, the Ninth Circuit has questioned the practice of discrediting a claimant with a mental impairment based on the failure to seek treatment. In *Nguyen v. Chater*, the court noted that the symptoms of depression are often not recognized, making "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day" an improper basis for rejecting an examining physician's opinion. *Nguyen v. Chater,* 100 F.3d 1462, 1065 (9th Cir. 1996). In so holding, the court cited the Sixth Circuit's decision in *Blankenship v. Bowen,* where the court invalidated an ALJ's reasons for rejecting a claimant's assertions about his depression. "'[A]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.* (citing *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989)).

It therefore stands to reason that if the failure to seek mental health treatment is an improper basis for questioning a claimant's credibility, so too is the claimant's failure to be wholly compliant. More importantly, though, is Plaintiff's testimony that, at least for some period of the relevant time frame, she did not have medication and/or mental health treatment because she could not afford it. AR 42. "[D]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007) (citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir.1995)).

Finally, the ALJ questions Plaintiff's credibility because "[h]er problems appear to be with not getting along with her family and going back and forth with her relationship with her husband." AR 28. The ALJ fails to explain, however, why this somehow lessens the impact of her bipolar disorder. Indeed, it is unclear how the targets of Plaintiff's violent and aggressive behavior calls her credibility into question.

The reasons set forth by the ALJ for rejecting Plaintiff's credibility are therefore not supported by substantial evidence.

C.   Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

1  The Court finds that remand for further proceedings is appropriate. On remand, the ALJ must explain why he rejected the additional limitations imposed by Dr. Hirokawa or alter the RFC accordingly. The ALJ must also properly analyze Plaintiff's credibility.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Juanita Rivera and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   September 27, 2010                    /s/ **Dennis L. Beck**
                                               UNITED STATES MAGISTRATE JUDGE